UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAE CAPITAL LLC,

    Plaintiff,

    v.

SMALL BUSINESS ADMINISTRATION, et al.,

    Defendants.

Civil Action No. 22-cv-776 (TSC)

## MEMORANDUM OPINION

Plaintiff Mae Capital ("Mae Capital")—a talent representation company that represents country music performing artists—sued the United States Small Business Administration and its Administrator, Isabella Casillas Guzman (collectively, "SBA") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Am. Compl. ¶¶ 1, 15, ECF No. 11. Mae Capital sued the SBA after it was denied funding from the "Shuttered Venue Operator Grant" ("SVOG") program—an emergency relief grant created for operators of shuttered venues during the COVID-19 pandemic. *Id.* ¶¶ 1, 3. Both parties have moved for summary judgment. Mae Capital Mot. for Summ. J. ("Mae Capital MSJ"), ECF No. 25; SBA Mot. for Summ. J. ("SBA MSJ"), ECF No. 39. Mae Capital also asks the court to complete the administrative record, or in the alternative, to supplement the record with extra-record evidence. Mot. to Complete Admin. R. ("Record Mot."), ECF No. 23. For the reasons below, Mae Capital's motion for summary judgment will be DENIED, the SBA's cross-motion for summary judgment will be GRANTED, and Mae Capital's motion to complete the administrative record will be DENIED.

## I.  BACKGROUND

### A. Legal and Statutory Background

During the COVID-19 pandemic, Congress established the Shuttered Venue Operators Grant ("SVOG") Program and set aside $15 billion to support shuttered venue operators. Economic Aid to Hard-Hit Businesses, Nonprofits, and Venues Act, Pub. L. 116-260 §§ 323(d)(1)(H), 324, 134 Stat. 1993, 2021, 2022 (2020) (codified at 15 U.S.C. § 9009a). The statute lists several categories of entities that are potentially eligible for a grant, including talent representatives. 15 U.S.C. § 9009a(a)(1)(A). To qualify as a talent representative under the SVOG program, at least 70% of an entity's operations must involve the representation or management of artists or entertainers who engage in qualifying artistic performances. *See* 15 U.S.C. § 9009a(a)(10).

To establish eligibility for an SVOG award, an entity must have had "gross earned revenue during the first, second, third, or, . . . fourth quarter in 2020 that demonstrates not less than a 25 percent reduction from [its] gross earned revenue . . . during the same quarter in 2019." § 9009a(a)(1)(A)(i)(II). An eligible entity receives an initial grant award of 45 percent of its 2019 gross earned revenue. 15 U.S.C. § 9009a(c)(1)(A)(i)(I). SVOG applicants are required to submit certain financial documents to demonstrate eligibility for a grant, including the Internal Revenue Service "IRS" Form 4506-T, which allows the SBA to verify an entity's tax information and claimed revenue with the IRS. *See* Administration Record, ("AR"), ECF No. 47 at 19, 439.

### B. Mae Capital's SVOG Award Application

On April 26, 2021, Mae Capital applied for a SVOG grant of $738,671.85, claiming eligibility as a talent representative. Am. Compl. ¶ 55; AR at 4–6. The dispute here centers on whether Mae Capital provided sufficient documentation to support its eligibility for a SVOG grant.

First, the parties disagree on whether Mae Capital submitted an acceptable IRS Form 4506-T. Mae Capital MSJ at 10; SBA MSJ at 7. As part of its initial application, Mae Capital submitted a Form 4506-T, *see* AR at 4–10, 112, 138, but the form was not submitted in the required PDF format so the SBA could not verify Mae Capital's tax information. AR at 138–39; SBA MSJ at 7. On June 2, 2021, the SBA informed Mae Capital that "[t]here was a problem processing [its] 4506-T" and directed it to "upload another SVOG-specified 4506-T in pdf format." AR at 139, 149. Mae Capital re-submitted the Form 4506-T. Mae Capital MSJ at 3. But on July 21, 2021, the SBA again told Mae Capital that its Form 4506-T "cannot be processed as submitted" because Mae Capital's now third submitted Form 4506-T "was not consistent with the SVOG-specific IRS Form 4506-T guidance." AR at 136; SBA MSJ at 7. The SBA once again directed Mae Capital to upload a corrected 4506-T, which it did that same day. *See* AR at 136; Mae Capital MSJ at 3.

On August 12, 2021, the SBA again informed Mae Capital that it could not obtain its tax transcripts from the IRS using its submitted Form 4506-T. AR at 114. This time, the SBA told Mae Capital that if it wished to continue the application process, it needed to submit an alternative verification document. *Id.* The SBA listed four alternative tax and financial documents that Mae Capital could submit in lieu of the Form 4506-T. *Id.*

Second, the parties disagree on whether Mae Capital's alternative verification document complied with the SBA's instructions, which specified that alternative verification documents, such as a copy of a federal tax return, must include a "letter from a CPA certifying that the attached tax returns were prepared and submitted to the IRS by that CPA on a certain date." *Id.* (cleaned up). In response to the SBA's August 12, 2021, communication, Mae Capital uploaded a Schedule C federal tax return and a letter from Mae Capital's CPA. AR at 77-111. The letter stated, "To Whom

It May Concern: I prepared [Mae Capital Founder] Brian McElyea's 2019 tax return, and it was filed on July 16, 2020." AR at 78.

On August 24, 2021, Mae Capital's application was denied via the SBA portal. *See* AR at 4. It is undisputed that this denial did not give a stated reason for the denial. The next day, Mae Capital appealed the SBA's decision and was again denied on November 8, 2021. AR at 1–3. In affirming its denial, the SBA explained that Mae Capital's "application was declined, at least in part," because it (1) is currently suspended or disbarred from contracting with the federal government[1], (2) did not meet the principal business activity standard, and (3) did not meet one or more eligibility criteria as a talent representative. *See* AR at 18–19. The SBA's published FAQs inform applicants that determinations on appeal are final agency decisions, that applicants "are encouraged to carefully review [] the . . . list of acceptable documents to ensure they upload all relevant documents during the appeals process," and that there is no secondary appeals process. *See* ECF No. 41-1, Ex. A, Shuttered Venue Operators Grants FAQ ("SVOG FAQ") No. 233, Oct. 21, 2021.

C. **Procedural Posture**

On March 21, 2022, Mae Capital filed this action. Compl., ECF No. 1. On May 25, 2022, the SBA rescinded its November 8, 2021, decision and decided to re-evaluate Mae Capital's application. AR at 437. On August 17, 2022, the SBA once again denied Mae Capital's application, citing its "failure to submit all the requested documents and [also] the existing discrepancies in its records." AR at 439. The letter stated that because Mae Capital did not submit the required documents to resolve discrepancies in its records, or to provide the SBA with a

---

[1] The SBA later conceded that Mae Capital was mistakenly classified as being suspended or disbarred from contracting with the federal government and thus did not include this reason in its later denial letter on August 17, 2022. AR at 439.

properly completed Form 4506-T, the SBA could not find that it was eligible for an SVOG award. *Id.* This August 17, 2022, decision was a final agency action. AR at 441.

On November 15, 2022, Mae Capital filed an Amended Complaint, alleging that the SBA's decision was arbitrary and capricious (Count I), contrary to law (Count II), and unsupported by substantial evidence (Count III). Mae Capital also alleges that it was deprived of due process and equal protection in violation of the Fifth Amendment to the U.S. Constitution (Count IV). ECF No. 11.

## II.    LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In an Administrative Procedure Act ("APA") case, the court "sits as an appellate tribunal" for the agency when evaluating a motion for summary judgment under Federal Rule of Civil Procedure 56, rather than considering whether there are genuine disputes of material fact. *Am Bioscience Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The entire case on review is a question of law," and the court should only consider "arguments about the legal conclusion to be drawn about the agency action." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). This review is, therefore, based on "the administrative record already in existence" at the time of the agency action. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

## III.    ANALYSIS

### A. The Court Denies Mae Capital's Request to Complete or Supplement the Administrative Record

"[T]he focal point for judicial review" of agency action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla.*

*Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (citation omitted). To ensure that a court review only those documents that were before the agency, parties are not allowed "to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). The exceptions "are quite narrow and rarely invoked." *CTS Corp. v. Envtl. Prot. Agency*, 759 F.3d 52, 64 (D.C. Cir. 2014); *see United Student Aid Funds v. Devos*, 237 F. Supp. 3d 1, 4 (D.D.C. 2017) (charting the course of the D.C. Circuit's jurisprudence on extra-record evidence). The court may consult extra-record evidence if the "procedural validity of the agency's action remains in serious question . . . or the agency affirmatively excluded relevant evidence." *CTS Corp.*, 759 F.3d at 64 (internal citations omitted).

The court will deny Mae Capital's request to complete the record or consider certain extra-record evidence because the information Mae Capital seeks to include is either already in the record or was not before the SBA at the time it made its final decision. Mae Capital also fails to show that the SBA affirmatively excluded relevant evidence.

First, Mae Capital urges the court to supplement the administrative record with Mae Capital founder Brian McElyea's declaration, which purports to "provide[] background information about Mae Capital's SVOG application" and authenticate SBA's initial denial notification dated August 24, 2021. Record Mot. at 7. Although the declaration provides background, that information is already in the administrative record, *see* AR at 1–3, and is not "needed 'to determine whether the agency considered all the relevant factors.'" *Daikin Applied Americas, Inc. v. EPA*, 39 F.4th 701, 716-17 (D.C. Cir. 2022) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010). For example, the record already contains information as to when Mae Capital initially applied for

a SVOG award, AR at 4–6, the fact that the August 24, 2021, portal denial did not have a stated reason for the denial, *see* AR at 4, and the reasons for the August 17, 2022 denial, AR at 439. *See James Madison Ltd. ex rel. Hecht v. Ludwig,* 82 F.3d 1085, 1095–96 (D.C. Cir. 1996) (finding it unnecessary to supplement administrative record with underlying source documents because record contained detailed memoranda describing agency's findings and recommendations). As in *James Madison*, Mae Capital fails to demonstrate that the record is "in any respect inadequate as a basis" for this court's review of the SBA's decision. *Id.* at 1096.

Second, Mae Capital argues that considering the rest of the extra-record evidence—the post-decision correspondence between Mae Capital and the SBA—is appropriate because the evidence shows gross procedural deficiencies within SBA's decision-making process, that Mae Capital's revenue was exactly as represented in its application, and that the SBA did not consider all relevant factors in its review. Record Mot. at 9.

Mae Capital received the SBA's final denial letter on August 17, 2022. AR at 438. On August 25, 2022, it provided the SBA with a corrected Form 4506-T. Record Mot. at 4. The next day, on August 26, 2022, "the SBA notified Mae Capital that it would not accept the Form 4506-T authorization because it was untimely." *Id.* On September 15, 2022, Mae Capital provided the SBA with a new letter from its CPA to apparently conform the letter to SBA guidelines. *Id.* On October 31, 2022, Mae Capital resent these documents to the SBA. *Id.*

The SBA did not, as Mae Capital claims, ignore this post-decision evidence, because these documents were not properly submitted to the SBA and therefore not before the agency at the time it made its decision. Indeed, because Mae Capital repeatedly failed to follow the SBA's multiple requests to properly submit the necessary documents, the relevant evidence was not, as Mae Capital contends, "readily available to the SBA." Record Mot. at 9. Mae Capital's unhappiness

Page **7** of **17**

with the SBA's refusal to accept this after-the-fact evidence is not sufficient to establish that the SBA failed to consider a relevant factor. The SBA did not "deliberately or negligently exclude[] documents that may have been adverse to its decision," *Kempthorne* at 1002 (citation omitted), and there is no indication that the SBA "skew[ed] the record by excluding unfavorable information." *Blue Ocean Inst. v. Gutierrez,* 503 F. Supp. 2d 366, 369 (D.D.C. 2007) (citation omitted). Consequently, the current record "does not deprive the Court of a sufficient administrative record to evaluate the agency's finding on a relevant factor." *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 39 (D.D.C. 2018), *aff'd,* 7 F.4th 1201 (D.C. Cir. 2021).

The administrative record "should not include materials that were not considered by agency decisionmakers." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (citation omitted). "Limiting review of the administrative record to only what the agency decisionmakers directly or indirectly considered is important." *Id.* at 5. And Mae Capital has not shown "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals Inc. v. Food and Drug Admin.*, 709 F.3d 44, 47 (D.C Cir. 2013)); *see United Student Aid Funds*, 237 F. Supp. 3d at 5 (finding "overall lack of industry-focused evidence" constituted a "gross procedural deficiency" because the court could not, on the administrative record alone, determine whether the agency complied with its procedural obligations in announcing a "new rule" under the APA) (quoting *Hill Dermaceuticals*, 709 F.3d at 47); *see Esch v. Yeutter*, 876 F.2d 976, 992–93 (D.C. Cir. 1989) (finding procedural deficiencies where agency failed to follow multi-level appeals procedure and reviewing court could not "determine whether appellees got their procedural just due"). The court will therefore deny Mae Capital's request to add these documents to the administrative record.

### B. APA Review

#### i. Legal Framework

Under the APA, a court will set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," contrary to statute, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard of § 706(2)(A) is a "catchall" that generally subsumes the "substantial evidence" standard of § 706(2)(E). *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984). In an arbitrary and capricious challenge, the central question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983); *see also Nat'l Tel. Co-op. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained."). Judicial review of agency action is "highly deferential . . . the court presumes the validity of agency action and must affirm unless the [agency] failed to consider relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (quoting *Cellco P'ship v. FCC*, 357 F.3d 88, 93–94 (D.C. Cir. 2004)).

#### ii. SBA's Denial Was Not Arbitrary or Capricious

A "fundamental" requirement of administrative law is that an agency "set forth [] reasons" for its decision; failure to do so constitutes arbitrary and capricious agency action. *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (cleaned up) (quoting *Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). In denying an application, "the core requirement is that the agency explain why it chose to do what it did." *Id.* at 737 (internal quotation marks omitted) (quoting Henry J. Friendly, Chenery Revisited: Reflections on Reversal and

Remand of Administrative Orders, 1969 DUKE L.J. 199, 222 (1969)).  The denial must be one of reasoning; it must not be just a conclusion; it must "articulate a satisfactory explanation for the agency's action."  *Tourus Recs., Inc.*, 259 F.3d at 737 (quoting *Motor Vehicle*, 463 U.S. at 103).

The SBA denied Mae Capital's application because it could not determine Mae Capital's eligibility for an SVOG award based on Mae Capital's submitted financial documents.  AR at 438–40.  Based on the record evidence, and as explained below, the SBA's denial was not arbitrary and capricious and is supported by substantial evidence.

The court rejects Mae Capital's argument that the SBA never told Mae Capital the actual reason that its Form 4506-T forms were rejected until its last denial decision.  In its November 2021 denial letter, three months after its initial denial, the SBA told Mae Capital that its application was denied, in part, because it did not meet the principal business activity or did not meet one or more of the specific eligibility criteria.  AR at 19.  The SBA needed Mae Capital's tax documents to verify its eligibility for the award amount it was seeking and to ensure that 70 percent of Mae Capital's business operations involved representation or management of two or more artists or entertainers.  AR at 439–40.  The record shows that the SBA reviewed Mae Capital's financial documents but because Mae Capital failed to provide the required support for its claimed revenue, the SBA could not determine Mae Capital's eligibility.  Based on the record, this was a rational conclusion.

When review of an agency's action is "bound up with a record-based factual conclusion," the reviewing court must determine whether that conclusion "is supported by substantial evidence."  *Dickinson v. Zurko,* 527 U.S. 150, 164 (1999) (internal quotation marks omitted); *Kaufman v. Perez,* 745 F.3d 521, 527 (D.C. Cir. 2014).  Here, the SBA's conclusion is indeed supported by substantial evidence.

The SBA gave Mae Capital multiple opportunities to properly submit a correct Form 4506-T so that the SBA could determine Mae Capital's eligibility for an award. AR at 133, 136, 139. Although Mae Capital had access to information on how to properly submit this form, it repeatedly failed to do so.

For example, Mae Capital had access to SBA instructional documents showing how to properly submit a Form 4506-T. The SBA sent Mae Capital a website link—which was already public—with these instructional documents and detailed instructions on how to submit an SVOG-specific version of Form 4506-T. *See* AR at 136. The website provides five instructional documents on how to submit an IRS 4506-T, including an example of a completed Form 4506-T, a checklist for the SVOG-specific version of Form 4506-T, an example with visual instructions, and another example with detailed instructions.[2]

These instructions were posted in May 2021—after Mae Capital submitted its initial application *but before* the SBA's repeated requests to Mae Capital to correct its form. Mae Capital never sent a properly completed form and so the SBA could not verify Mae Capital's tax information and claimed revenues, as it explained in its final denial letter. Further instructions on taxes and 4506-T were also included in the SVOG's published FAQs from October 20, 2021, which would have alerted Mae Capital to the errors in its submissions. *See* ECF No. 41-1, Ex. A, SVOG FAQ No. 233.

Even if one of those incorrect forms came pre-populated by the SBA, *see* Mae Capital MSJ at 7, Mae Capital still submitted the wrong form on at least two occasions and later failed to submit

---

[2] U.S. Small Business Administration, *SVOG 4506-T Information*, https://www.sba.gov/document/support-svog-4506-t-information (last accessed March 3, 2025). The court may take judicial notice of information posted on official public government websites. *See Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

appropriate alternative verification documents. The SBA's final decision is not solely based on the lack of a Form 4506-T submission—it is also based on the later forms Mae Capital did submit that were still insufficient and that raised further concerns given the form discrepancies, as explained below.

It is true that the SBA did not give a reason for its August 2021 denial of Mae Capital's application. But the SBA did give a reason in its November 2021 denial letter, and it provided even more details of the reason for its denial in its August 2022 denial letter, detailing the issues with Mae Capital's financial forms. For example, the August 2021 denial explained that although Mae Capital submitted a Schedule C tax form to satisfy the tax verification requirement, the tax return it provided did not include the required attestation. AR at 439–40. The letter explained that Mae Capital "failed to provide the requested information and what it did provide raised further concerns," given that its Schedule C did not match the Schedule C that Mae Capital had previously submitted, and it was not "in a consistent format with the rest of the tax return or completed in the same manner as other Schedule Cs within the same tax return, including an erroneous or incomplete entry on line 27." AR at 440. Thus, part of the reason for the SBA's denial was that Mae Capital's "additional documents created a discrepancy with previously submitted documents." *Id.*

The record supports this conclusion. The attestation does not state that (1) the CPA prepared the tax return accompanying the letter, or that (2) Mae Capital's CPA filed that same tax return with the IRS, which is what the SBA needed to confirm that the tax returns were authentic and to establish Mae Capital's eligibility. AR at 114; 439–40. And the proffered Schedule C was in fact different from a previously submitted Schedule C. *Compare* AR at 38–39, *with* AR at 77-111.

Given Mae Capital's failure to provide reliable support for its claimed revenue at multiple points throughout the application process, the SBA's denial of Mae Capital's eligibility for a grant is supported by substantial evidence. That much is enough—so long as an agency "articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle*, 463 U.S. at 43 (internal quotation marks and citation omitted), a court may not "substitute [its] judgment for the agency's," even if it "might have reached a different conclusion in the first instance." *Epsilon Elecs., Inc. v. United States Dept. of Treasury, Off. Foreign Assets Control*, 857 F.3d 913, 918 (D.C. Cir. 2017).

### iii.   SBA's Denial Was Consistent with the SVOG Statute and Not Contrary to Law

Mae Capital argues that the process by which the SBA handled and adjudicated its application was adversarial, not remedial, and in contravention of the SBA's mission, the purpose of the Act that created the SVOG program, and President Biden's Executive Order ("EO") 14002: Economic Relief Related to the Covid-19 Pandemic, 86 FR 7229. *See* Mae Capital MSJ at 16–17. It argues that given SBA's mission, the EO, and the legislative intent behind the program, the SBA had a duty to assist Mae Capital in its application process. *Id.* at 17. Consequently, it argues, the SBA's decision was "not in accordance with law." *Id.* at 19. This argument is unavailing.

First, the court rejects Mae Capital's argument that the SBA "made no effort to assist [it] in perfecting its application," *id.* at 19, because, as noted above, the SBA did assist Mae Capital when it explained the application's deficiencies, and then gave Mae Capital several opportunities to fix its deficiencies.

Mae Capital next points to the Act that established the SVOG program, 15 U.S.C. § 9009a, arguing that the "Act established the SVOG Program to provide emergency financial assistance to eligible live entertainment businesses impacted by the global COVID-19 pandemic," including

grants for live performing arts organizations. *Id.* at 16. But Mae Capital does not say more about legislative intent.

As for SBA's mission, Mae Capital states that SBA "was created as an independent agency of the federal government to aid, counsel, assist and protect the interests of small business concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of our nation," citing to the Small Business Act, 15 U.S.C. §§ 631, 633. *Id.*

Finally, Mae Capital points to President Biden's EO 14002, which states that the "Order directs all federal executive departments and agencies to identify actions they can take within their existing authorities to address the economic fallout from the Covid-19 pandemic," and "prompts agencies to consider actions that will make better use of data, reduce unnecessary barriers to access services, and allow for coordination with other programs across the Federal government." *Id.* at 17. As Mae Capital points out, the EO notes that "many individuals, families, and small businesses have had difficulties navigating relief programs with varying eligibility requirements, and some are not receiving the intended assistance," and it ordered federal agencies to "consider actions that facilitate better use of data and other means to improve access to, reduce unnecessary barriers to, and improve coordination among programs." *Id.*; EO No. 14002, 86 Fed. Reg. 16, 7229 (Jan. 22, 2022). Mae Capital highlights that the EO directs all federal agencies to "prioritize actions that provide the greatest relief to individuals, families, and small businesses." Mae Capital MSJ at 17.

Although Mae Capital includes relevant historical and statutory background, it points to no directive, statute, or executive order requiring the SBA to specifically help applicants successfully complete the application process, even after the SBA has provided guidance to the applicant. While the SBA was indeed tasked with distributing the SVOG award to businesses in need during

the COVID-19 pandemic, the court rejects Mae Capital's contention that the SBA was tasked with the type of hand-holding Mae Capital sought.

As the court already noted, the SBA ultimately denied Mae Capital's application because none of the information that it submitted at any stage of the process showed that it met the eligible revenue requirements pursuant to 15 U.S.C. § 9009a(a)(3)(A)(i)(I) and 15 U.S.C. § 9009a(a)(3)(A)(i)(II).  A reasonable factfinder could have reached the same conclusion.  *See Pac. Ranger, LLC v. Pritzker*, 211 F. Supp. 3d 196, 222 (D.D.C. 2016).  The SBA's decision was therefore not contrary to law and its denial decision will not be set aside as a violation of the APA.

    **iv.**    **SBA's Refusal to Accept Post-Decision Materials Did Not Deprive Mae Capital of Due Process**

Mae Capital's due process and equal protection claims under the APA and the Fifth Amendment are based on the SBA's refusal to accept supplemental information from Mae Capital after it submitted its administrative appeal.  Mae Capital also argues that in denying its original application, the SBA "provided no reasons or bases for its decision."  Mae Capital MSJ at 11.  This, coupled with an "arbitrary submission cut-off immediately thereafter . . . deprived [Mae Capital] of due process[.]"  *Id.* at 12.  This argument also fails.

"[T]he fundamental norm of due process clause jurisprudence requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing."  *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).  Fair notice is often required in the agency context, as a statute may not be "impermissibly vague" and must "provide a person of ordinary intelligence fair notice of what is prohibited."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

Mae Capital argues that the SBA's refusal to accept additional documents after it submitted its appeal deprived it of due process. But the process Mae Capital received was consistent with the SBA's published guidance. As the court has explained, *see supra* Section II(B)(ii), Mae Capital was given sufficient notice of its application deficiencies and given several opportunities to fix these deficiencies *before its initial denial*.

Now, in an attempted second bite at the apple, Mae Capital provides the court and the SBA with corrected eligibility forms and supporting financial information. But it submits these documents after the fact, and the documents are not part of the "administrative record already in existence" when the SBA made its decision. *See Pitts*, 411 U.S. at 142. The SBA's published FAQs inform applicants that determinations on appeal are final agency decisions, that applicants should carefully review their documents before submitting their appeal, and that there is no secondary appeals process. *See* ECF No. 41-1. Mae Capital is entitled to no more and no less process than any other applicant.

Mae Capital also argues that failure to submit adequate documentation is not a valid reason to deny an application because the SBA expressly removed this reason in its October 20, 2021, published guidance. *See* Mae Capital Mot. at 14. But this revised guidance was not in effect when the SBA first denied Mae Capital's application on August 24, 2021, meaning failure to submit adequate documentation was then a valid reason to deny an application. And even if it was in effect during the SBA's subsequent denials, "fails to meet the definition of an eligible entity" was a valid reason to deny an application. ECF No. 25-3, Ex. A, No. 87, Oct 20, 2021. This development does not alter the fact that the SBA needed to determine Mae Capital's eligibility, which entailed a review of certain tax and financial documents. The SBA's decision not to accept additional information after Mae Capital's appeal was denied was not arbitrary or capricious, nor

did it deprive Mae Capital of adequate due process, especially given that it provided several instructions on how Mae Capital should submit the required documents.

## IV.   CONCLUSION

For the foregoing reasons, the court will DENY Mae Capital's Motion for Summary Judgment, ECF No. 25; GRANT the SBA's Cross Motion for Summary Judgment, ECF No. 39; and DENY Mae Capital's Motion to Complete the Administrative Record, ECF No. 23. An Order will accompany this Memorandum Opinion.

Date: March 26, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge